UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RAMONA HINOJOSA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-319 |
| | § | |
| BRAD LIVINGSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

**ORDER DENYING DEFENDANTS'
RULE 12(b)(6) MOTION TO DISMISS,
DENYING MOTION FOR RECONSIDERATION,
AND DEFINING DISCOVERY LIMITS**

On February 26, 2014, the Court denied in open court the Rule 12(b)(6) Motion to Dismiss (D.E. 7), filed by Defendants Brad Livingston, Rick Thaler, and William Stephens (collectively "the TDCJ Defendants"). This Order codifies that ruling. In addition, the Court denies the TDCJ Defendants' motion for reconsideration (D.E. 30),[1] and sets forth the appropriate "narrowly tailored" discovery "to uncover only those facts" needed to rule on the TDCJ Defendants' immunity claims.

**I.    Jurisdiction.**

The Court has federal question jurisdiction over this action.  28 U.S.C. § 1331.

**II.    Background facts and proceedings.**

Plaintiff Ramona Hinojosa is the mother of the decedent, Albert Hinojosa. At the time of his death, Albert Hinojosa was a prisoner in the Texas Department of Criminal

---

[1] Plaintiff filed a motion to strike Defendants' motion for reconsideration, arguing that reconsideration was premature without a written order. (*See* D.E. 31). Plaintiff's motion to strike is now moot, and is denied as such.

1 / 17

Justice, Criminal Institutions Division (TDCJ-CID).  Mr. Hinojosa's medical history was positive for hypertension, diabetes, depression, and schizophrenia.  (*See* D.E. 1, ¶ 134).

In August 2012, Mr. Hinojosa was in-transit and was temporarily assigned to the Garza West Transfer Facility in Beeville, Texas.  On August 29, 2012, Mr. Hinojosa was found unresponsive in his cell; he was pronounced dead at 1:50 a.m.  *Id.* ¶ 135-138.  An autopsy concluded that Mr. Hinojosa, who was 44 years old at the time, was "vulnerable to the effects of environmental hyperthermia due to pre-existing natural disease, and likely suffered a seizure followed by fatal cardiac arrhythmia."  *Id.* ¶ 140.

On October 15, 2013, Plaintiff filed this wrongful death action alleging, *inter alia,* that Defendants violated Albert Hinojosa's constitutional rights by housing him in a cell without air-conditioning or otherwise addressing the extreme heat in the context of Mr. Hinojosa's preexisting medical conditions, in deliberate indifference to his serious medical needs.  (D.E. 1).  Plaintiff named the following individuals as defendants:  (1) Brad Livingston, TDCJ Executive Director; (2) Rick Thaler, former TDCJ-CID Director; (3) William Stephens, former TDCJ-CID deputy Director, and now the TDCJ-CID Director; (4) Eileen Kennedy, TDCJ Region IV Director; (5) Ernest Guterrez, Senior Warden, Garza West Unit; and (6) Dr. Owen Murray, Chief Physician Executive for the University of Texas Medical Branch, Correctional Managed Care (UTMB-CMC). Plaintiff also sued the Texas state agencies, TDCJ and UTMB.  Plaintiff has sued the

individual Defendants in their official capacities for injunctive and declaratory relief, and in their individual capacities for monetary damages.[2]

On November 12, 2013, UTMB filed a Rule 12(b)(6) Motion to Dismiss (D.E. 4), and it was denied. (D.E. 24).

On November 15, 2013, the TDCJ Defendants, Livingston, Thaler, and Stephens, filed the instant motion to dismiss on the basis of qualified immunity.[3] (D.E. 7).

On November 22, 2013, Warden Guterrez filed his Answer. (D.E. 10).

On December 6, 2014, Plaintiff filed her response in opposition to Defendants' motion to dismiss. (D.E. 14). Thereafter, the TDCJ Defendants filed their reply to Plaintiff's response (D.E. 15), and an amended reply. (D.E.17).

On December 31, 2013, Plaintiff filed a Notice of Supplemental Authority, (D.E. 18), to which the TDCJ Defendants' filed a response. (D.E. 19).

### III. The Court's February 26, 2014 ruling.

On February 26, 2014, the Court heard arguments on the TDCJ Defendants' motion to dismiss on the basis of qualified immunity.[4] The TDCJ Defendants argued

---

[2] Of course, any claims for monetary damages against the named defendants in their official capacities, as well as the TDCJ or UTMB, are barred by the Eleventh Amendment. *See e.g. Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989) (a claim for monetary damages against a state official in his or her official capacity is "no different from a suit against the state itself," and consequently, is barred by the Eleventh Amendment). The Eleventh Amendment does not bar a plaintiff's claim for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123, 159 (1908).

[3] The TDCJ Defendants characterize their Motion to Dismiss as both "Amended" (D.E. 7, p. 1), and not (*Id.* at 6). In addition, Defendants address the motion to "The Honorable District Court Judge Greg Costa." (D.E. 7 at 6). For the record, there is no "amended" motion to dismiss.

[4] Qualified immunity shields government officials performing discretionary functions from liability for civil damages so long as their conduct does not violate clearly established rights

3 / 17

that Plaintiff was attempting to hold them liable for the conduct of their subordinates despite § 1983's express bar against liability based on respondeat superior. *See e.g. Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987) (supervisory officials cannot be held liable for the actions of subordinates on any theory of vicarious liability or respondeat superior); *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011) (a supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."). Defendants argued also that they were not involved in any medical, housing, or classification decision regarding Albert Hinojosa such that Plaintiff could not establish § 1983's requisite requirement of personal involvement. *See e.g. Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied,* 464 U.S. 897 (1983) ("[Section] 1983 does not give a cause of action based on the conduct of subordinates. Personal involvement is an essential element of a civil rights cause of action.").

In turn, Plaintiff argued that, since 2007, at least seventeen TDCJ inmates had died in TDCJ prisons from heat stroke or heat-related causes, with ten of those deaths occurring in 2011. Plaintiff contends that the TDCJ Defendants were personally aware of these deaths, but failed to take any affirmative measures, including instituting policies to manage the temperatures in the prison dorms and cells and/or adopting policies and procedures in regards to inmates that are more vulnerable to the heat based on their

---

which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Wilson v. Layne,* 526 U.S. 603, 614 (1999).

medical conditions, in deliberate indifference to the needs of Albert Hinojosa in particular.

In addition to these arguments, the Court took notice of similar lawsuits against the TDCJ, the UTMB, and prison/medical officials alleging, *inter alia*, Eighth Amendment violations based on injury and/or death allegedly caused by extreme heat in other TDCJ prisons. In particular, the Court reviewed *Webb v. Livingston, et al.,* Civil Action No. 6:13-cv-711-LED-JDL, pending in the Eastern District of Texas, Tyler Division. The *Webb* case is also a wrongful death action brought by the estate of a deceased prisoner, Robert Allen Webb, who was confined at the Hodge Unit in Rusk, Texas, at the time of his death.[5] As in the present case, the *Webb* plaintiff sued Livingston, Stephens, and Thaler alleging that these TDCJ officials had personal knowledge of life-threatening conditions due to high summer temperatures in TDCJ units without air-conditioning. On November 5, 2013, Livingston, Thaler, and Stephens filed a Rule 12(b)(6) motion to dismiss, and on December 2, 2013, Magistrate Judge Love recommended that the motion to dismiss be denied, and that limited discovery proceed on the issue of qualified immunity. (*See Webb,* Case No. 6:13-cv-711 at D.E. 35, 57). On March 17, 2014, the Tyler district court adopted in part the recommendation allowing

---

[5] Jeffery Edwards, Plaintiff's lead counsel, is also a counsel of record in the *Webb* case. Indeed, Mr. Edwards and his law firm represent numerous plaintiffs in other heat-related death actions against the TDCJ and UTMB. Similarly, in these heat cases, the TDCJ and UTMB defendants are represented by many of the same attorneys with the Office of the Attorney General. As a result, many of the pleadings filed in this case are virtually identical to the pleadings filed in those other proceedings.

limited discovery to proceed against Livingston, Thaler, and Stephens, and finding it unnecessary to decide the issue of qualified immunity at this time. *Id.* at D.E. 85.

Upon consideration of the parties' pleadings and arguments, as well as a review of the rulings in similar TDCJ heat-related death cases, on February 26, 2014, this Court denied the TDCJ Defendants' Rule 12(b)(6) motion from the bench, finding that additional discovery on the issue of qualified immunity was warranted. Citing *Backe v. LeBlanc,* 691 F.3d 645 (5th Cir. 2012), the Court noted that Plaintiff had plead specific facts that allowed the Court to draw the reasonable inference that the TDCJ Defendants are liable for the harm alleged, and further, that those facts defeat the TDCJ Defendants' claim to qualified immunity. *See Backe*, 691 F.3d at 648. However, the Court acknowledged that, despite this finding, it remains "unable to rule on the immunity defense without further clarification of the facts." *Id.* Therefore, the Court denied the TDCJ Defendants' Rule 12(b)(6) motion, but specifically *did not* rule on the issue of qualified immunity; rather, via this written order, the Court sets forth a plan of limited discovery "narrowly tailored to uncover only those facts needed to rule on the immunity claims." *Id.* (internal citation omitted).

**IV.   Motion for reconsideration.**

The TDCJ Defendants move for reconsideration of the February 26, 2014 oral order denying their Rule 12(b)(6) motion. (D.E. 30). Defendants argue that Plaintiff's original complaint sets out, at most, a medical malpractice claim "disguised by conclusory legalese as an Eighth Amendment claim." *Id.* at 2. Defendants maintain that they are "executive security administrators," and, as such, are not involved in or

responsible for medical decisions or determinations regarding whether or not a particular prisoner needs to be housed in an air-conditioned unit or requires other special considerations, as those matters are handled "by UTMB medical professionals assigned to make those calls based on their judgment, training, and experience." *Id.* The TDCJ Defendants argue that Plaintiff's complaint is essentially a demand for air-conditioned prisons, an accommodation that is neither constitutionally required nor properly considered by the federal courts. *Id.*

### A. Rule 12(b)(6) standard.

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss a complaint for failure to state a claim upon which relief may be granted; however, the district court must construe the complaint in a light most favorable to the plaintiff, and the allegations contained therein must be taken as true. *Erickson v. Pardus,* 551 U.S. 89, 93-94 (2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face*." Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In the context of a defendant's motion to dismiss, the district court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

### B. Qualified immunity in the context of Rule 12(b)(6).

As this Court noted and stressed repeatedly at the February 26, 2014 hearing, when evaluating a defendant's qualified immunity defense within the context of a Rule 12(b)(6) motion, a district court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe,* 691 F.3d at 648 (internal citation omitted). The plaintiff must state a claim for relief that "is plausible on its face," and the court is to disregard statements that are "no more than conclusions" which are "not entitled to the assumption of truth." *Id.* Specifically, the plaintiff must plead specific facts that allow the court to: (1) draw the reasonable inference that the defendant is liable for the harm alleged; and (2) defeat a qualified immunity defense. *Id.*

In their 12(b)(6) motion, and now, on reconsideration, the TDCJ Defendants argue that Plaintiff's allegations fail to state cognizable constitutional violations and, even if they did, they are entitled to qualified immunity and therefore not subject to suit. *See Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) ("The [qualified immunity] entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.") (emphasis in original).

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the

burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To discharge this burden, the plaintiff must satisfy a two-prong test." *Atteberry v. Nocana Gen. Hosp.,* 430 F.3d 245, 251-52 (5th Cir. 2005). First, the plaintiff must claim that the defendants committed a constitutional violation under current law. *Id.* (citation omitted). Second, the plaintiff must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of. *Id.*

While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

    **C.**    **Eighth Amendment.**

The Court found, and continues to so find, that Plaintiff has alleged sufficient facts that, if true, state an Eighth Amendment claim of deliberate indifference as to Albert Hinojosa's health and safety.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. Amend. VIII. Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's

necessities" violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement. First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. *Hudson*, 503 U.S. at 8. The challenged condition must be "extreme." *Id.* at 9. While an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney*, 509 U.S. 25, 33 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety. *Id.* at 35. Moreover,

> … the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Id.* at 36. The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

Second, the prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. *Hudson*, 503 U.S. at 8. The proper standard is that of deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Negligence does not suffice to satisfy this standard, *id.* at 305, but

a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm would result." *Farmer*, 511 U.S. at 835. In defining the deliberate indifference standard, the Supreme Court stated:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer,* 511 U.S. at 837. Furthermore, the official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### (1) Extreme temperature claims are cognizable under the Eighth Amendment.

Allowing a prisoner to be exposed to extreme temperatures may violate the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991). In *Wilson*, the Supreme Court speculated that the combination of a failure to issue blankets and a cold cell at night could result in an unconstitutional condition of confinement. *Id.* The Fifth Circuit has held that prisoners have a right to protection from extreme cold. *Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) (citation omitted).

The Eleventh Circuit addressed a claim of excessive heat in *Chandler v. Crosby*, 379 F.3d 1278 (11 Cir. 2004). There, Florida death row prisoners claimed that the hot temperatures in their cells during the summer months violated the Eighth Amendment, and they named as defendants the Secretary of Florida's Department of Corrections, and

11 / 17

the warden of the prison; however, both defendants were sued only in their official capacities for injunctive relief. *Chandler* was ultimately decided on extensive summary judgment evidence in favor of the prison officials; however, the evidence demonstrated that the temperatures at issue did not exceed 85-86 degrees. *Id.*

In 2012, the Fifth Circuit reviewed a case from this division in which a prisoner sued the Garza West Unit warden and assistant warden for Eighth Amendment violations alleging that the temperatures in the dorms reached 102 degrees. *Blackmon v. Garza,* 484 Fed. Appx. 866, 873 (5th Cir. 2012) (per curiam). The Fifth Circuit reversed summary judgment in favor of the prison officials finding that the prisoner-plaintiff presented sufficient evidence to allow a jury to conclude that the warden and assistant warden both knew, or should have known, that the extreme heat presented a serious risk to the prisoner-plaintiff's health and safety. *Id.* at 873. The Fifth Circuit specifically noted that the prisoner-plaintiff was "especially susceptible to the health risks of extreme heat because of his advanced age, pre-existing high blood pressure, and use of prescription medication." *Id.* at 872.

On its face, Plaintiff's complaint of excessive heat states a viable Eighth Amendment claim.

**(2)     Proper defendants in extreme heat cases.**

The TDCJ Defendants do not seriously contest that Plaintiff has failed to state a cognizable constitutional claim, but instead, argue that, as "executive security personnel," they were neither responsible for nor involved in any medical decisions concerning Albert Hinojosa, including his proper housing in light of his medical history or needs.

In *Blackmon v. Garza,* at the district court level, this Court dismissed defendant Brad Livingston on the grounds of qualified immunity ***on summary judgment.*** Although the federal courts agree that qualified immunity issues should be decided at an early stage in the litigation, in those cases, such as here, where a plaintiff states a cognizable claim and equally refutes the defendant's assertion of objective reasonableness, facts must be developed and a record established. *Backe,* 691 F.3d at 648. In *Chandler*, the Eleventh Circuit implicitly accepted the warden and the Secretary of Florida's Department of Corrections as the proper defendants. Further, in the numerous heat-death cases that are currently pending in Texas federal courts, the TDCJ Defendants have not been dismissed at the Rule 12(b)(6) juncture.

The Court finds that, despite the vast size of the TDCJ prison system and the delegating and dividing of authority down the chain of command, in addition to across the board to UTMB, the TDCJ Defendants now before the Court knew or should have known about the number of heat-related deaths occurring within the TDCJ prison system. Such information would be available from past lawsuits raising similar complaints to decisions from the Fifth Circuit detailing remedial yet essential measures to prevent heat-related injuries to inmates during months of excessive heat. *See e.g., Blackmon,* 484 Fed. Appx. at 871-72 (suggesting air handlers to circulate the air, personal fans, additional water breaks, and increased showers); *Gates v. Cook,* 376 F.3d 323 (5th Cir. 2004) (affirming injunctive relief requiring the Mississippi Department of Corrections "to provide fans, ice water, and daily showers when the heat index is 90 degrees or above").

There remain significant questions to be answered as to the details of the TDCJ Defendants' knowledge, actions, omissions and/or policies in regards to TDCJ prison operations in times of extreme heat. In particular, in accessing personal knowledge, it is necessary to know when and how the TDCJ Defendants learned about specific prisoner deaths, including the death of Albert Hinojosa, and/or serious injury related to extreme heat; whether the TDCJ Defendants ordered that conditions be monitored or a study conducted regarding extreme heat and inmate safety; their familiarity with Fifth Circuit case law addressing the dangers of heat within the context of the Eighth Amendment and whether or not policies were implemented or changed in accordance with such direction; whether the TDCJ has performed any studies into the costs of reducing extreme temperatures within the dorms via more efficient systems, engineering modifications, or other facility upgrades; whether the TDCJ Defendants personally consulted with UTMB officials in regards to the transportation and housing of at-risk inmates during the summer months; whether the TDCJ Defendants considered that at-risk inmates be maintained in air-conditioned facilities when in transport; and whether the TDCJ Defendants received copies of notes, memoranda, emails, or other correspondence from TDCJ wardens concerning heat-related issues at their units and any administrative responses thereto. The TDCJ Defendants' responses to these questions are "particularly important when evaluating the second prong of the qualified immunity test – the reasonableness of [the TDCJ Defendants'] actions in light of the clearly established constitutional right" to be free from extreme temperatures. *Blackmon*, 484 Fed. Appx. at 869. Until these questions

are resolved, the Court is "unable to rule on the immunity defense without further clarification of the facts." *Backe,* 691 F.3d at 648.

For all these reasons, the TDCJ Defendants' motion for reconsideration (D.E. 30) is denied.

## V.   Permissible scope of limited discovery.

As previously noted, there are currently pending in Texas federal courts at least ten § 1983 cases involving prisoner deaths in the context of extreme heat, and these cases are at various stages in the litigation process. In the *Webb* case referenced earlier, the plaintiff served Mr. Livingston with a subpoena *duces tecum* seeking an extraordinary range of document discovery. (*See* Case No. 6:13-cv-711, D.E. 50, Ex. 1 and Ex. A). The document production sought in *Webb* appears calculated to obtain discovery related to the merits of the entire case and is not appropriately limited to the issue of qualified immunity. Given that Plaintiff's counsel in this case is also an attorney of record in *Webb,* the Court sets forth the following guidelines for limited discovery tailored to the issue of qualified immunity.

Discovery is limited to the personal knowledge and personal conduct of each Defendant as it relates to Albert Hinojosa and the circumstances leading to his death. Such discovery may include Defendants' knowledge of extreme temperatures at the Garza West Unit, including knowledge of any prisoner complaints to prison officials about the temperature in the dorms or cells for the months of May through September for the years of 2010, 2011, and 2012. Plaintiff may inquire as to each Defendant's personal knowledge, if any, in regards to the effects of extreme heat on pre-existing medical

conditions of hypertension, diabetes, depression, and schizophrenia, whether Defendants are familiar with the medications generally prescribed to treat such conditions, and whether Defendants have knowledge or training concerning medications and extreme heat. Plaintiff may inquire as to any policies and procedures in place at the Garza West Unit, as well as TDCJ system-wide policies or procedures, adopted or in place to address prison operations when temperatures are considered to constitute extreme heat.

Although Plaintiff's complaint includes allegations of conditions throughout the TDCJ and relates injury or death due to high heat in several other cases, this is not a class action, nor have the cases been consolidated. The causes of action before this Court concern only Mr. Hinojosa and the conditions at the Garza West Unit. It is preferred that, if possible, discovery be conducted via interrogatories and other written methods. If depositions are necessary, they shall be noticed and conducted on the least intrusive basis possible.

## VI. Conclusion.

The Court has followed the Fifth Circuit's procedure that enables it to defer ruling on Defendants' defense of qualified immunity. The Court finds that Plaintiff has pled specific facts that allow this Court to draw the reasonable inference that Defendants are liable for the harm alleged and equally not entitled to qualified immunity such that dismissal on a Rule 12(b)(6) motion is not appropriate and is properly denied. *Backe,* 691 F.3d at 648. However, despite this determination, the Court remains unable to rule on the immunity defense without further clarification of the facts, and therefore, the limited discovery set forth above is ordered.

Accordingly, Defendants Livingston, Thaler, and Stephens' Rule 12(b)(6) motion to dismiss (D.E. 7) stands denied, and the motion for reconsideration (D.E. 30) is denied.[6] The issue of whether Defendants' are entitled to the protection of qualified immunity is not decided at this time.  Limited discovery as outlined above is permitted for purposes of resolving the issue of the TDCJ Defendants' affirmative defense of qualified immunity.

ORDERED this 27th day of March, 2014.

*Nelva Gonzales Ramos*
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE

---

[6] The Tyler district court in *Webb* makes essentially the same analysis and ruling as the Court does here, but declines to actually rule on the TDCJ Defendants' Rule 12(b)(6) motion.  This Court finds that, under the first step of *Backe*, denial of Defendants' Rule 12(b)(6) motion is appropriate, and does not give license to Defendants to seek an immediate appeal.