UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RENE ARTURO HINOJOSA, as | § | |
| representative of the ESTATE OF | § | |
| RAMONA HINOJOSA, and the | § | |
| ESTATE OF ALBERT HINOHOSA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:13-CV-00319 |
| | § | |
| BRAD LIVINGSTON, RICK THALER, | § | |
| WILLIAM STEPHENS, EILEEN | § | |
| KENNEDY, ERNEST GUTIERREZ, JR., | § | |
| LANNETTE LINTHICUM, JENNIFER | § | |
| *[sic]* BUSKIRK, ADELE QUINTANILLA, | § | |
| RUBEN VILLEGAS, EISMAEL RUIZ, | § | |
| and OWEN MURRAY, in their individual | § | |
| capacities, TEXAS DEPARTMENT OF | § | |
| CRIMINAL JUSTICE, and UNIVERSITY | § | |
| OF TEXAS MEDICAL BRANCH, | § | |
|     Defendants. | § | |

_____

**DEFENDANT UNIVERSITY OF TEXAS MEDICAL BRANCH'S
ANSWER TO PLAINTIFF'S (HINOJOSA) AMENDED COMPLAINT**
_____

Defendant the University of Texas Medical Branch at Galveston ("UTMB") submits this Answer to Plaintiff's Amended Complaint.

## I.
## STATEMENT OF THE CASE

Albert Hinojosa ("Hinojosa") was an inmate housed at the Garza West Unit of the Texas Department of Criminal Justice ("TDCJ").  Plaintiff Rene Arturo Hinojosa ("Plaintiff") purports to be the administrator of the estate of Albert Hinojosa and the estate of Ramona Hinojosa, the purported mother of Hinojosa, who is also deceased.  Dkt. No. 73 at ¶ 2.  Plaintiff alleges that Hinojosa was disabled because he suffered from hypertension, depression, schizophrenia,

diabetes, and/or obesity, and was prescribed medications to treat such conditions. *Id.* at ¶¶ 167-192.  Plaintiff alleges that UTMB discriminated against Hinojosa by denying him reasonable accommodations necessary to allow him access to TDCJ and UTMB's programs and services. *Id*. at ¶ 4.  On August 29, 2012, Hinojosa died while assigned to the Garza West Unit.  *Id*. at ¶¶ 194, 209.  Plaintiff brought suit based on Hinojosa's death.

Plaintiff sues UTMB for violations of Title II of the Americans with Disabilities Act ("ADA"), and the Americans with Disabilities Act Amendments Act ("ADAAA"), § 504 of the Rehabilitation Act ("RA"), and the Texas Tort Claims Act.  *Id*. at 212-220, 227-231.  Plaintiff also sues a number of individual TDCJ and UTMB individual defendants pursuant to 42 U.S.C. § 1983.  *Id*. at ¶¶ 212-221.

## II.
## ANSWER

Pursuant to Federal Rule of Civil Procedure 8(b), and for the express purpose of requiring Plaintiff to meet his burden of proof, UTMB hereby denies each and every allegation contained in Plaintiff's Amended Complaint (Dkt. No. 73), except those expressly admitted herein.

1.   UTMB denies that inmates regularly suffer from extreme indoor temperatures at the Garza West Unit in Beeville, Texas, and denies that Hinojosa suffered from or died from heat.  UTMB is unable to admit or deny whether Hinojosa was Plaintiff's uncle.

2.   UTMB is unable to admit or deny whether Plaintiff has the capacity to bring claims as the representative of the Estate of Albert Hinojosa or of the Estate of Ramona Hinojosa.

3.   UTMB denies that the UTMB individual defendants violated Hinojosa's constitutional rights under color of law in violation of his Eight and Fourteenth Amendment right to protection from cruel and unusual punishment.

4.   UTMB is unable to admit or deny whether Plaintiff was Hinojosa's brother.  UTMB admits that Plaintiff brings claims against TDCJ and UTMB relating to their alleged failure to accommodate Hinojosa.  UTMB denies that it caused Hinojosa's death by failing to provide reasonable accommodations for his alleged disabilities in violation of the ADA, the ADAAA, and/or the RA.

5.      UTMB admits this Court has jurisdiction over Plaintiff's § 1983claims, but UTMB denies that there has been a valid abrogation of Eleventh Amendment immunity under the ADA giving this Court jurisdiction over Plaintiff's ADA claims.  UTMB denies that this Court has jurisdiction over Plaintiff's state law claims brought under the Texas Tort Claims Act.

6.      UTMB admits venue is proper.

7.      UTMB is unable to admit or deny what Plaintiff's legal or familial relationship to Hinojosa was, if any.  UTMB is unable to admit or deny whether: (1) Plaintiff is the representative of Hinojosa's estate; (2) Plaintiff died intestate; (3) an administration of Hinojosa's estate is pending in Nueces County, Texas; Plaintiff is a resident of Nueces County, Texas; or (5) Plaintiff has been appointed the administrator of Hinojosa's estate.

8.      UTMB is unable to admit or deny the allegations regarding Ramona Hinojosa's legal or familial relationship to Hinojosa, her capacity to sue, or her capacity to sue on behalf of Hinojosa's estate. UTMB is unable to admit or deny Plaintiff's legal or familial relationship to Ramona Hinojosa, whether he has been appointed administrator of her estate, or whether an administration is pending in Nueces County, Texas.

9.      UTMB admits Brad Livingston is the executive director of TDCJ.  UTMB is unable to admit or deny the remaining allegations and statements regarding Defendant Livingston.

10.     UTMB is unable to admit or deny the allegations regarding Defendant Rick Thaler.

11.     UTMB is unable to admit or deny the allegations regarding Defendant William Stephens.

12.     UTMB is unable to admit or deny the allegations regarding Defendant Eileen Kennedy.

13.     UTMB is unable to admit or deny the allegations regarding Defendant Ernest Gutierrez, Jr.

14.     UTMB admits Defendant Dr. Lannette Linthicum is the director of TDCJ's Health Services Division.  UTMB is unable to admit or deny the remaining allegations and statements regarding Defendant Linthicum.

15.     UTMB is unable to admit or deny the allegations regarding Defendant Kathryn Buskirk.

16.     UTMB is unable to admit or deny the allegations regarding Defendant Eismael Ruiz.

17.     UTMB is unable to admit or deny the allegations regarding Defendant Ruben Villegas.

18.     UTMB is unable to admit or deny the allegations regarding Defendant Adelle Quintanilla.

19.     UTMB admits that Dr. Owen Murray is the chief physician executive for UTMB's correctional managed care program and that he oversees the medical, mental health, and dental services provided to inmates in the TDCJ units for which UTMB provides medical care, including the Garza West Unit.  UTMB is unable to admit or deny in what capacity Dr. Murray is sued.

20.     UTMB is unable to admit or deny allegations regarding Defendant TDCJ.

21.     UTMB admits that it is located in Galveston, Texas, and is a component of the University of Texas System.  UTMB is unable to admit or deny that its "high-ranking policymakers" reside in Galveston.  UTMB admits that it contracts with the Correctional Managed Health Care  Committee ("CMHCC") to provide healthcare to TDCJ inmates, including inmates at the Garza West Unit.  UTMB is unable to admit or deny whether it provides health care to approximately 80% of TDCJ inmates.  UTMB admits that it receives federal funds.  UTMB is unable to admit or deny whether it is sued for compensatory relief.  UTMB admits that it has been served with process and has appeared in this litigation.

22.     UTMB is unable to admit or deny the National Weather Service statistics.  UTMB denies that Hinojosa was a victim of heat.

23.     UTMB admits that many of the Garza West Unit's inmates live in areas that are not climate controlled.  UTMB is unable to admit or deny whether apparent indoor temperatures routinely exceed 100 degrees.

24.     UTMB is unable to admit or deny the allegations regarding the specific effects of the ventilation system at the Garza West Unit.

25.     UTMB is unable to admit or deny the allegations regarding the effect of the Garza West Unit's construction materials.

26.     UTMB is unable to admit or deny the allegation regarding Defendant Livingston's statement.

27.     UTMB denies the allegation regarding its knowledge of temperatures at TDCJ prisons.  UTMB is unable to admit or deny allegations regarding other parties' knowledge.

28.     UTMB denies the allegation that Dr. Murray has known and discussed that "temperatures this elevated cause the human body to shut down."  UTMB is unable to admit or deny the allegations regarding the effect of "temperatures this high" because it is vague.  UTMB is unable to admit or deny allegations regarding other parties' knowledge and conversations.

29.     UTMB denies that the National Oceanic and Atmospheric Administration's heat index chart (as incorporated into Plaintiff's Amended Petition) is included in UTMB's training materials.  CMHCC's policies do contain the US National Weather Service's Heat and Humidity Index.

30.     UTMB is unable to admit or deny the allegations regarding the National Oceanic and Atmospheric Administration's heat index chart.  UTMB admits that high humidity can increase the apparent temperature.

31.     UTMB is unable to admit or deny whether apparent temperatures routinely reach the "danger" or "extreme danger" zones inside the Garza West Unit and the other allegations regarding NOAA.  UTMB denies that it has done nothing to cool indoor temperatures to protect inmates from death by heat stroke.

32.     UTMB is unable to admit or deny the allegations regarding the intent or purpose of the NOAA chart.  UTMB denies that Hinojosa had an increased risk of heat-related illness or injury due to medical conditions or medications.

33.     UTMB denies that it was well known to UTMB leadership that people with obesity, diabetes, or hypertension are more vulnerable to extreme temperatures.  UTMB admits that certain medications may increase a patient's risk for heat-related illness.  UTMB is unable to admit or deny allegations regarding the specific knowledge of TDCJ.  UTMB denies the remaining allegations.

34.     UTMB is unable to admit or deny allegations regarding Defendant Thaler's knowledge, actions, or statements.

35.     UTMB denies that twenty TDCJ inmates have died from hyperthermia since 1998.

36.     UTMB is unable to admit the allegations regarding whether medical examiners and pathologists underreport heat-related injuries and deaths by hyperthermia or whether other inmates and TDCJ employees suffered heat exhaustion and other heat-related illnesses.

37.     UTMB denies that the twenty inmates referred to in Paragraph 35 all shared certain characteristics.  UTMB denies the remaining allegations.

38.     UTMB admits that Hinojosa was assigned to the Garza West Unit, which is in TDCJ's Region IV. UTMB is unable to admit or deny whether "two of these men…lived in prisons in TDCJ's Region IV" because the allegation is vague.  UTMB is unable to admit or deny the allegations regarding Defendant Kennedy's position or actions.

39.     UTMB is unable to admit or deny the allegations regarding TDCJ employees' knowledge and actions.

40.     UTMB is unable to admit or deny the allegation regarding TDCJ's representative's testimony.

41.     UTMB is unable to admit or deny the allegations regarding TDCJ or TDCJ employees' actions.

42.     UTMB is unable to admit or deny the allegations regarding TDCJ employees' knowledge and actions.

43.     UTMB is unable to admit or deny the allegations regarding TDCJ employees' statements and actions.

44.    UTMB denies that UTMB executives, including Dr. Murray, were unconcerned with inmate deaths.  UTMB denies that changes were never made to its or CMHCC's policies and screening materials.  UTMB admits that Dr. Murray works with TDCJ officials and CMHCC to ensure that prison facilities provide adequate health care to inmates, that inmates have access to adequate health care, that policies ensure that inmates receive adequate care, that medical needs are not treated with deliberate indifference, and that inmates are not subjected to dangerous conditions.

45.    UTMB is unable to admit or deny the allegations regarding Drs. Linthicum and. Buskirk's scope of employment, knowledge, and actions.

46.    UTMB denies that Dr. Murray has been "grossly derelict and deliberately indifferent" to protecting inmates' health.  UTMB is unable to admit or deny the allegations regarding Dr. Murray's specific knowledge about heat and its relationship to depression, hypertension, and age.  UTMB denies that policies state that "extreme heat above 90 degrees indoors is harmful medically and potentially lethal to inmates suffering from hypertension, depression, mental illness, and who are over forty years of age."  UTMB is unable to admit or deny allegations regarding Drs. Linthicumor Buskirk's knowledge or actions.

47.    UTMB is unable to admit or deny allegations regarding the specific knowledge of Dr. Murray, specific statements he made during press tours, or whether he personally examined nearly all of the TDCJ facilities.  UTMB denies that the article Plaintiff quotes in this allegation refers to statements made by Dr. Murray.  UTMB is unable to admit or deny allegations regarding Dr. Linthicum"s or Dr. Buskirk's knowledge or actions.

48.    UTMB denies that Dr. Murray routinely receives reports about inmates becoming sick because of the heat each summer.  UTMB is unable to admit or deny allegations regarding Drs. Linthicum or Buskirk's knowledge or actions.

49.    UTMB is unable to admit or deny allegations regarding other parties' knowledge.

50.    UTMB denies the allegation regarding hazardous conditions.

51.    UTMB denies that extreme indoor temperatures at the Garza West Unit in the summer are well known to UTMB officials.  UTMB is unable to admit or deny the allegations regarding TDCJ and TDCJ employees' knowledge and actions.

52.    UTMB is unable to admit or deny whether the windows at the Garza West Unit are sealed shut.

53.    UTMB is unable to admit or deny the allegations regarding TDCJ and TDCJ employees' knowledge and actions.

54.    UTMB admits that some areas of the Garza West Unit are climate controlled.  UTMB denies that the Defendants do nothing to house inmates with heat-sensitive conditions in those areas.

55.    UTMB is unable to admit or deny whether certain TDCJ employees' offices or the armory at the prison are climate controlled.  UTMB denies that it considers possible damage to TDCJ's weaponry more important than inmates' lives.

56.    UTMB admits that CMHCC policies require certain precautions before inmates work in certain elevated temperatures.  UTMB denies that its policies cover those who suffer from "heat-sensitive conditions;" rather, CMHCC's Heat Stress Policy provides: "[w]ork assignments for offenders on medications classified as anhydrotics, poikilothermics or potentiators (see Attachment A) should be considered carefully. In general, offenders on antipsychotic drugs should not be allowed to work or recreate in environments where the apparent air temperature is 95° F or higher."   UTMB denies that CMHCC's policies make no accommodation for inmates' housing assignments or locations and that its policies only prevent heat-related injuries "in the workplace."

57.    UTMB is unable to admit or deny allegations regarding Defendants Livingston, Thaler', and Stephens's knowledge or statements.

58.    UTMB is unable to admit or deny allegations regarding other parties' knowledge.

59.    UTMB admits that it and Dr. Murray, along with representatives from TDCJ, Texas Tech University Health Science Center, and the CMHCC, have formulated policies designed to minimize heat exhaustion and heat stroke as related to inmate work assignments.  UTMB is unable to admit or deny the specific knowledge of Dr. Murray and denies that he has not instituted any practice or policy concerning safe housing of inmates who are allegedly "especially vulnerable to the heat."   UTMB is unable to admit or deny allegations regarding Dr. Linthicum's or Buskirk's knowledge or actions.

60.    UTMB admits that it makes treatment-related housing recommendations to TDCJ. UTMB denies that its policies intentionally deny accommodations to inmates with any disabilities.

61.    UTMB denies that Dr. Murray knows that UTMB does not recommend special housing for inmates with heat-sensitive medical conditions.  UTMB is unable to admit or deny allegations regarding other parties' knowledge.

62.    UTMB admits that some parts of the Garza West Unit are climate controlled, but denies that inmates were not given opportunities to cool off in climate controlled environments.

63.    UTMB admits that inmates with diabetes, hypertension, and depression, as well as inmates on antipsychotic drugs or diuretics, as well as obese people, may be housed in

areas that are not climate controlled.  UTMB denies that inmates are housed in extreme temperatures or are in danger of suffering heat stroke.

64.     UTMB denies that at least twenty TDCJ inmates have died of hyperthermia since 1998 due to extreme indoor temperatures.  UTMB denies the remaining allegations regarding Dr. Murray's and UTMB's actions. UTMB is unable to admit or deny allegations regarding other parties' actions.

65.     UTMB is unable to admit or deny allegations regarding other parties' knowledge or actions.

66.     UTMB is unable to admit or deny the allegation regarding TDCJ's representative's testimony or knowledge.

67.     UTMB is unable to admit or deny allegations regarding other parties' knowledge.

68.     UTMB is unable to admit or deny allegations regarding other parties' knowledge or feelings.

69.     UTMB is unable to admit or deny allegations regarding the correctional officers' union.

70.     UTMB is unable to admit or deny allegations regarding the correctional officers' union, TDCJ or TDCJ employees' knowledge and actions.

71.     UTMB is unable to admit or deny the allegations regarding TDCJ's and TDCJ employees' knowledge and actions.

72.     UTMB is unable to admit or deny allegations regarding TDCJ policies.

73.     UTMB is unable to admit or deny the allegation regarding the purpose of misters in TDCJ's livestock barns.

74.     UTMB is unable to admit or deny allegations regarding TDCJ policies.

75.     UTMB is unable to admit or deny allegations regarding TDCJ policies.

76.     UTMB is unable to admit or deny the allegations regarding TDCJ employees' knowledge and statements.

77.     UTMB is unable to admit or deny the allegation regarding Defendant Livingston's actions.

78.     UTMB is unable to admit or deny the allegation regarding Defendant Thaler's statements.

79.     UTMB admits that CMHCC's policies recognize that heat stroke is a medical emergency. UTMB denies that CMHCC's policies recognize that delay in treating heat stroke may be fatal; however, UTMB admits that in some circumstances delay in treating heat stroke may lead to death.

80.     UTMB admits that CMHCC's policies specifically acknowledge that certain medical conditions, including diabetes, cardiovascular disease, and psychiatric conditions, may affect heat tolerance.  UTMB denies that CMHCC's policies acknowledge that obesity affects heat tolerance.

81.     UTMB is unable to admit or deny the allegations regarding TDCJ's statements. UTMB denies any knowledge that inmates who are over the age 40, overweight, or use certain medications, including diuretics and psychotropics, are the "weakest of the weak and at heightened risk of death from heat," as alleged.

82.     UTMB admits that its officials, including Dr. Murray, know that some inmates are over the age of 40, are overweight, or are prescribed certain medications, such as diuretics and psychotropics.  UTMB denies that those circumstances are disabilities.  UTMB is unable to admit or deny the allegations regarding TDCJ employees' knowledge.  UTMB denies the remaining allegations.

83.     UTMB admits that the Garza West Unit is a transfer facility where inmates are processed into the TDCJ prison system.  UTMB admits that Hinojosa arrived at the Garza West Unit from the Nueces County Jail.  UTMB is unable to admit or deny whether the Nueces County Jail was air conditioned.

84.     UTMB denies the allegations regarding acclimatization.

85.     UTMB is unable to admit the allegations regarding policies of Texas county jails and thus cannot admit or deny whether inmates are at a "heightened risk of heat-related injury or death" when they arrive at the Garza West Unit from a county jail.

86.     UTMB is unable to admit or deny the allegations regarding the facts and circumstances of other inmates' incarcerations and deaths.

87.     UTMB admits that Hinojosa spent less than 48 hours at the Garza West Unit before he died.

88.     UTMB is unable to admit or deny allegations related to TDCJ's policies and TDCJ employees' knowledge.  UTMB denies the allegation that "it is brutally hot and difficult to acclimate."

89.     UTMB is unable to admit or deny allegations related to TDCJ's policies.

9

90.     UTMB is unable to admit or deny the allegations regarding other parties' knowledge or how inmates cope with heat.

91.     UTMB denies that it can take up to ten days for inmates to receive a complete intake physical. CMHCC policy provides  that "a comprehensive medical evaluation will be completed on all new incoming offenders within seven days of their arrival in the system. Offenders who have had a health appraisal in TDCJ within the previous ninety (90) days are evaluated at the discretion of the facility health authority / medical director."

92.     UTMB denies that the initial medical triage is performed only by licensed vocational nurses and denies that the LVNs who perform initial medical triage have only "little training."  UTMB denies that UTMB and TDCJ do nothing to ensure that inmates receive safe housing or medically necessary accommodations.

93.     UTMB denies the allegations regarding accommodation of disabilities.

94.     UTMB denies the allegations regarding accommodation of disabilities.

95.     UTMB denies that the intake physical is the first opportunity for UTMB and TDCJ to accommodate inmates' heat-sensitive medical problems.  UTMB denies the allegation regarding immediate screening for heat-sensitive medical conditions.

96.     UTMB is unable to admit or deny the allegations regarding TDCJ employees' knowledge.

97.     UTMB denies that it fails to make sure inmates receive physical examinations promptly. UTMB denies it leaves inmates in danger.

98.     UTMB denies that it knew inmates like the Hinojosa were in "grave danger."  UTMB denies that all newly-arrived inmates are housed in non-climate controlled areas of the Garza West Unit, and denies that inmates who have not yet received a physical are denied respite in climate controlled areas.

99.     UTMB denies that it or Dr. Murray knows that TDCJ and UTMB fail to immediately identify inmates with heat-sensitive medical conditions, that this endangers inmates, or that UTMB and TDCJ do nothing to correct it.   UTMB is unable to admit or deny allegations regarding TDCJ employees' knowledge.  UTMB denies that Dr. Murray is a TDCJ official.

100.    UTMB denies that medical staff hours at the Garza West Unit are 9:00 a.m. to 8:00 p.m. UTMB is unable to admit or deny the allegation regarding how many inmates are housed at the Garza West Unit every night; how many inmates housed at the Garza West Unit are obese, have hypertension or diabetes,take medications for serious mental illnesses; or

how many inmates housed at the Garza West Unit are "at greater risk from the extreme heat."

101.  UTMB denies that inmates needing after-hours medical care are evaluated over the phone by licensed vocational nurses at the McConnell Unit.  UTMB denies licensed vocational nurses are unable to take vital signs.

102.  UTMB denies that it or Dr. Murray made any staffing decisions for financial reasons. UTMB is unable to admit or deny the allegations related to TDCJ and its employees.

103.  UTMB admits that UTMB employees at the Garza West Unit knew there was no medical staff at the facility after 8:00 p.m., and that inmates may have to receive immediate emergency medical care by being transported to a hospital by ambulance if medical necessity required such an action.   UTMB is unable to admit or deny the allegation regarding ambulances' travel times.  UTMB is unable to admit or deny the allegations related to TDCJ's and TDCJ employees' knowledge.

104.  UTMB denies that vital medical care was delayed and/or denied to Hinojosa.

105.  UTMB denies TDCJ employees should provide inmates with emergency medical care. UTMB is unable to admit or deny the allegations regarding TDCJ's training. UTMB is unable to admit or deny the causes of death for the listed individuals was heat stroke. UTMB denies ten inmates died from heat stroke in 2011.

106.  UTMB denies that UTMB and TDCJ medical staff are not involved in teaching officers to identify heat-related illnesses.  UTMB denies the allegations regarding the substance of the training materials.  UTMB denies the allegation that "low-level officers are the gatekeepers standing between [inmates] and a doctor."

107.  UTMB is unable to admit or deny these allegations as they relate only to TDCJ employees.

108.  UTMB is unable to admit or deny allegations regarding the facts and circumstances of James Shriver's incarceration and death.

109.   UTMB is unable to admit or deny allegations regarding the facts and circumstances of Dionicio Robles's incarceration and death.

110.  UTMB denies the listed inmates were known to suffer from heat-sensitive medical conditions.  UTMB denies no measures were taken to protect them from the extreme indoor temperatures.

111.  UTMB denies the arguments made in this paragraph.  UTMB denies that it knew about the deaths of the listed offenders.  UTMB is unable to admit or deny the allegations regarding TDCJ and its officials.

112.  UTMB is unable to admit or deny allegations regarding other parties' knowledge and statements.

113.  UTMB denies that Dr. Murray left vulnerable inmates at risk of heat stroke system-wide at any time.  UTMB denies that it has intake or housing policies and/or practices.  UTMB is unable to admit or deny the allegations regarding Drs. Linthicum and Buskirk's actions.

114.  UTMB admits that Larry McCollum was found unresponsive in his bunk at the Hutchins Unit on July 22, 2011, and was hospitalized until life support was withdrawn on July 28, 2011.  UTMB denies that McCollum was the first TDCJ inmate confirmed to die from heat stroke in 2011.

115.  UTMB admits that McCollum had not received a comprehensive physical examination from UTMB medical personnel prior to his transfer from Hutchins State Jail to Parkland Hospital on July 22, 2011.  UTMB is unable to admit or deny the circumstances of McCollum's conviction and sentence.  UTMB denies the remaining allegations.

116.  UTMB denies that Douglas Hudson suffered a heat stroke on July 24, 2011 at the Gurney Unit.  UTMB admits that Hudson's body temperature was 104.8 degrees when he received medical attention at the prison.  UTMB admits that Hudson was taken by ambulance to Palestine Regional Medical Center, and died on July 25, 2011.

117.  UTMB is unable to admit or deny the allegations regarding the facts and circumstances regarding Thomas Meyers's death.

118.  UTMB admits that Robert Webb was found unresponsive in his cell at the Hodge Unit early on the morning of August 4, 2011, and was pronounced dead shortly thereafter. UTMB admits that Webb was 50 years old at the time of his death.  UTMB denies Webb died of heat stroke.  UTMB admits that Webb had a history of depression but denies that he suffered from developmental disabilities.  UTMB denies that Webb was prescribed medication that made him "very susceptible to heat stroke."

119.  UTMB denies that Alexander Togonidze died of heat stroke on August 8, 2011, while incarcerated at the Michael Unit.  UTMB admits that Togonidze was 44 years old at the time of his death.  UTMB denies that Togonidze had been seen for heat-related medical problems each summer he was in TDCJ custody but was not provided any accommodations.

120.  UTMB is unable to admit or deny the circumstances surrounding and factors contributing to inmate Charles Cook's death.  UTMB denies that Michael Martone died of heat stroke at the Huntsville Unit on August 8, 2011.  UTMB admits that Martone was 57 years old at the time of his death.

121.  UTMB is unable to admit or deny the allegations regarding the facts and circumstances regarding Kelly Marcus's death.  UTMB is unable to admit or deny the allegation that Defendant Kennedy supervises the Connally Unit.

122.  UTMB admits that Kenneth Wayne James died on August 13, 2011, while he was assigned to the Gurney Unit.  UTMB denies that James had not had an intake physical.

123.  UTMB is unable to admit or deny the allegations as they relate only to TDCJ employees.

124.  UTMB denies that there are ten confirmed heat stroke deaths in 2011 that were caused by extreme heat in TDCJ housing areas.  UTMB denies the allegation that CMHCC policies were not changed after 2011.  UTMB denies the allegation that UTMB did not change its procedures after 2011. UTMB denies the allegation that it or its employees housed vulnerable inmates in extremely hot temperatures without any cooling protections or ignored the need to protect vulnerable inmates.

125.  UTMB denies that Rodney Adams died as a consequence of indifference by UTMB. UTMB admits that Adams died on August 4, 2012, was 45 years old at the time of his death, was assigned to the Gurney Unit, and had not had an intake physical.  UTMB denies the allegation that Adams arrived at the Gurney Unit the day before his death. UTMB denies Adams died of heat stroke.

126.  UTMB admits that Hinojosa died while assigned to the Garza West Unit on August 29, 2012.  UTMB denies the allegation that Hinojosa suffered a painful heat stroke.

127.  UTMB denies that it or Dr. Murray knew what the apparent indoor temperatures in TDCJ facilities were.  UTMB denies that it or its employees failed and refused to take reasonable steps to protect the health and safety of inmates.  UTMB is unable to admit or deny the allegations regarding TDCJ or TDCJ employees' knowledge or actions.

128.  UTMB is unable to admit or deny the allegations regarding other parties' personal knowledge.  UTMB is unable to admit or deny Dr. Murray's specific knowledge regarding inmate housing areas at the Garza West Unit.  UTMB is unable to admit or deny Dr. Murray's specific knowledge regarding summertime apparent temperatures throughout the state of Texas and the indoor temperatures in TDCJ units throughout the state of Texas.

129.  UTMB is unable to admit or deny the specific knowledge of the individuals listed herein. UTMB denies the allegation that it knew TDCJ "routinely housed people with

hypertension and depression in extremely hot facilities like the Garza West Unit." UTMB is unable to admit or deny the allegations regarding TDCJ's policies and practices. UTMB denies that Dr. Murray implements or is able to change TDCJ policies and practices.

130. UTMB is unable to admit or deny the allegations regarding other parties' knowledge.

131. UTMB is unable to admit or deny the allegations regarding other parties' knowledge or where they work.

132. UTMB is unable to admit or deny the allegations regarding other parties' knowledge.

133. UTMB denies that Dr. Murray works in Galveston. UTMB denies the allegations that Dr. Charles Adams is a UTMB executive or works in Galveston. UTMB is unable to admit or deny the allegations regarding Dr. Murray's or Dr. Adams's personal experiences.

134. UTMB is unable to admit or deny the allegations regarding other parties' knowledge or regarding TDCJ policies.

135. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

136. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

137. UTMB is unable to admit or deny the allegations regarding TDCJ employees' knowledge and actions.

138. UTMB is unable to admit or deny these allegations as they relate only to TDCJ.

139. UTMB is unable to admit or deny these allegations as they relate only to allegations against TDCJ and the *Valigura* action.

140. UTMB is unable to admit or deny these allegations as they relate only to allegations against TDCJ and the *Blackmon* action. UTMB is unable to admit or deny the allegations regarding TDCJ employees' knowledge and actions.

141. UTMB is unable to admit or deny the allegations regarding TDCJ employees' knowledge and actions.

142. UTMB denies that UTMB officials were dismissive of the *Blackmon* suit. UTMB admits that Dr. Charles Adams is a UTMB physician. UTMB denies that Dr. Adams is Dr. Murray's deputy. UTMB admits that Dr. Adams testified that the temperatures at issue did not violate Blackmon's rights. UTMB denies that Dr. Adams's quoted testimony is related to his testimony on whether the temperatures at issue violated Blackmon's rights.

UTMB denies that it and Dr. Murray ignored the problem and kept inmates in grave danger.

143.   UTMB is unable to admit or deny the allegation regarding Dr. Adams's purported email acknowledgements.  UTMB denies the remaining allegations.

144.   UTMB denies the allegations in this paragraph.

145.   UTMB is unable to admit or deny the allegations regarding TDCJ employees' knowledge.

146.   UTMB denies that UTMB providers at all prisons failed to accommodate inmates.

147.   UTMB denies the allegation that UTMB has testified that TDCJ does not provide enough beds system-wide to accommodate "even the inmates with serious medical conditions who are at greater risk of heat-related illness, injury or death."

148.   UTMB admits that the UTMB Utilization Review Committee can approve requests for assignment to infirmary beds.

149.   UTMB admits that the quoted testimony is from the deposition of Dr. Glenda Adams, that Dr. Adams was a senior medical provider at UTMB, and that she has been designated as an expert witness for UTMB.

150.   UTMB denies the allegation that "the system" did not have enough climate controlled beds to safely house inmates.  UTMB denies the allegation regarding the effect of a "lack of air-conditioned beds."

151.   UTMB admits that 551 beds within the TDCJ prison units are climate controlled.  UTMB denies the remaining allegations.

152.   UTMB denies that 14 inmates have died from heat stroke in TDCJ units and denies that it or Dr. Murray "turn a blind eye and expose the most vulnerable to dangerous extreme heat inside the prison."

153.   UTMB is unable to admit or deny the allegations that relate to a letter from State Representative Sylvester Turner to Defendant Livingston.

154.   UTMB is unable to admit or deny the allegations that relate to correspondence between Rep. Turner and Defendant Livingston or other TDCJ officials.

155.   UTMB admits that Defendant Livingston was sued in *McCollum v. Livingston* on June 26, 2012, a few weeks before Adams died.  UTMB denies that McCollum died of heat stroke.  UTMB is unable to admit or deny whether Texas and national media outlets covered "this story" before Adams died.

156.    UTMB is unable to admit or deny the allegations regarding media coverage of the temperatures at Texas prisons and actions taken based on the same.

157.    UTMB is unable to admit or deny the allegation related to TDCJ employees' knowledge.

158.    UTMB denies that Defendants did nothing to cool down the Garza West Unit and left inmates, including Hinojosa, in danger.

159.    UTMB is unable to admit or deny the allegations regarding whether conditions of the Garza West Unit are long-standing and well-documented.  UTMB denies that it knew inmates were at risk of prolonged exposure to "high ambient temperatures and humidity" that "posed a life-threatening health risk."

160.    UTMB denies that it or Dr. Murray chose to subject inmates to dangerous, extreme heat, and denies the remaining allegations.

161.    UTMB is unable to admit or deny the allegations related to TDCJ and its employees.

162.    UTMB denies that Dr. Murray regularly reviewed reports of inmates' heat-related injuries or knew inmates routinely suffered from heat-related medical conditions.  UTMB is unable to admit or deny the allegations related to TDCJ employees.

163.    UTMB denies that it or Dr. Murray failed to take reasonable steps to safely house inmates at the Garza West Unit and protect them from heat stroke.  UTMB denies that Dr. Murray was deliberately indifferent to the alleged "extremely dangerous conditions in TDCJ facilities."

164.    UTMB denies that it or Dr. Murray refused to act, authorize, or otherwise approve actions to address the alleged conditions.

165.    UTMB denies that the law is clearly estsablished that temperatures exceeding 90 degrees are cruel and unusual and create unconstitutional conditions of confinement.  UTMB denies that Dr. Murray is not entitled to qualified immunity.

166.    UTMB denies that the conditions at the Garza West Unit result in "gratuitous" pain and suffering for inmates or pose an imminent danger of serious physical illness, injury, or death.  UTMB denies the remaining allegations.

167.    UTMB admits that Hinojosa had a history of hypertension.  UTMB denies hypertension is a cardiovascular disease.  UTMB admits that for some patients, hypertension can lead to stroke and heart attacks.  UTMB is unable to admit or deny whether hypertension is the leading cause of stroke and a major cause of heart attacks.  UTMB admits that, for some patients, hypertension may cause damage to the cardiovascular system when blood flow asserts high pressure on artery walls.  UTMB is unable to admit or deny whether

hypertension is referred to as "the silent killer."  UTMB admits that with some patients hypertension can cause breathing problems and can result in organ damage if untreated or exacerbated.

168.    UTMB denies the allegations regarding the effects of hypertension and heart disease.

169.    UTMB admits that some medications used to treat hypertension are diuretics and that diuretics remove water from the blood to decrease blood pressure.  UTMB admits that diuretics may increase some patients' risk of heat illness if the medications cause dehydration and electrolyte imbalance in the patients.  UTMB admits that CMHCC's policies recognize diuretics may be associated with heat stress. UTMB denies the remaining allegations.

170.    UTMB admits that some medications used to treat hypertension are beta blockers. UTMB denies that beta blockers reduce the body's ability to sweat.  UTMB admits that an inability to perspire normally may increase some patients' risk for heat-related illnesses.

171.    UTMB denies the allegations about the effects of hypertension.

172.    UTMB admits that Hinojosa had a history of depression.  UTMB denies the allegations about the definitions of and cause of depression.  UTMB admits that symptoms of depression may include insomnia or excessive sleeping, loss of appetite, fatigue, feelings of worthlessness, irritability, persistent headaches, thoughts of suicide, and problems concentrating.

173.    UTMB admits that CMHCC policy lists five antidepressants as drugs associated with heat stress. UTMB denies the remaining allegations regarding policies about antidepressant medications.

174.    UTMB admits that Hinojosa was prescribed fluoxetine (Prozac).  UTMB is unable to admit or deny the allegation regarding why Hinojosa was prescribed fluoxetine because it was not prescribed by a UTMB physician.  UTMB admits that fluoxetine is a selective serotonin reuptake inhibitior (SSRI).

175.    UTMB is unable to admit or deny the allegation that Hinojosa's depression was a serious medical condition because the allegation is vague.  UTMB is unable to admit or deny whether Hinojosa was involuntarily committed to the North Texas State Hospital shortly before his incarceration at the Garza West Unit.

176.    UTMB admits that Hinojosa had a history of schizophrenia.  UTMB admits that schizophrenia is a chronic brain disorder.  UTMB admits that schizophrenia may cause some patients to experience hallucinations and paranoia, and can affect some patients'

abilities to think, speak, sleep, concentrate, and communicate.   UTMB denies the allegation that schizophrenia impairs the operation of the brain and neurological system.

177.   UTMB admits that schizophrenia may be treated with antipsychotic drugs.   UTMB admits that Hinojosa was prescribed risperdone, which is an antipsychotic drug, while in the Nueces County Jail.   UTMB denies that Hinojosa was administered risperdone while in TDCJ custody.   UTMB admits that some classes of antipsychotic medications are known to interfere with the body's ability to dissipate heat, which makes some patients taking those medications more vulnerable to heat illness than people not taking those medications.   UTMB admits that CMHCC policy recognizes that antipsychotic drugs are associated with heat stress.

178.   UTMB is unable to admit or deny the allegation that Hinojosa's schizophrenia contributed to his commitment at North Texas State Hospital.   UTMB is unable to admit or deny the allegation regarding the effects of schizophrenia on Hinojosa's abilities.

179.   UTMB admits that Hinojosa had diabetes.   UTMB denies that diabetes is caused by insulin imbalance.   UTMB admits that diabetes is a chronic disease.   UTMB admits that insulin is a hormone produced by the pancreas.   UTMB denies that diabetes results from improper insulin levels.   UTMB admits that diabetes is a physical condition that may affect the endocrine, digestive, circulatory, and nervous systems in some patients.

180.   UTMB admits that diabetes may affect some diabetic patients' ability to sweat.   UTMB admits that sweating is important to cool the body in extreme heat.   UTMB denies that an inability to sweat increases the body's core temperature.   UTMB admits that an inability to sweat may aggravate the risk of heat stroke in some cases.

181.   UTMB admits that diabetes may reduce blood circulation in some patients by impairing the action of the heart and decreasing the ability of the body to dilate the blood vessels at the skin.   UTMB admits that action of the heart and dilation of blood vessels at the skin are necessary to dissipate body heat and prevent heat illness.

182.   UTMB denies the allegations regarding diabetes and Hinojosa's physical abilities.

183.   UTMB denies the allegations regarding diabetes and Hinojosa's physical abilities.

184.   UTMB admits that CMHCC policy recognizes diabetes as a comorbidity that may affect heat tolerance.   UTMB denies the remaining allegations regarding diabetic inmates' susceptibility to injury and death and the characterization of the temperatures at the Garza West Unit.

185.   UTMB is unable to admit or deny the allegations regarding statements by the American Diabetes Association.

186. UTMB admits that Hinojosa was 5'10" and 370 pounds when he arrived at the Garza West Unit.  UTMB admits that Hinojosa was morbidly obese.  UTMB is unable to admit or deny the allegation that Hinojosa's weight was "outside the normal range" because it is vague.

187. UTMB admits that Hinojosa's body mass index was 53, which is greater than 40.  UTMB is unable to admit or deny the allegation that Hinojosa was twice his ideal weight according to the Centers for Disease Control.

188. UTMB is unable to admit or deny the allegation that Hinojosa's obesity likely contributed to, or was a cause of, his hypertension and diabetes, and thus affected his digestive, cardiovascular, nervous, and endocrine systems.

189. UTMB denies the allegations regarding Hinojosa's alleged obesity and his ability to sweat and breathe.

190. UTMB denies that TDCJ and UTMB's policies identify "people who are overweight" as being at additional risk of heat-related illness.

191. UTMB admits that UTMB officials, including Dr. Murray, know that some TDCJ inmates have hypertension, obesity, diabetes, schizophrenia, and/or depression.  UTMB is unable to admit or deny allegations regarding other parties' knowledge.

192. UTMB denies that it discriminated against Hinojosa by denying him reasonable accommodations necessary to allow him access to TDCJ and UTMB's programs and services.  UTMB denies that alleged extreme heat in TDCJ facilities denies people like Hinojosa access to TDCJ facilities.

193. UTMB is unable to admit or deny the allegations regarding the temperature at the Garza West Unit in August 2012.

194. UTMB admits that Hinojosa arrived at the Garza West Unit on August 27, 2012.  UTMB is unable to admit or deny the allegation regarding the time of day when Hinojosa arrived at the Garza West Unit.  UTMB admits that a nurse performed Hinojosa's intake triage, and that the screener learned that Hinojosa had a history of hypertension, diabetes, depression, and schizophrenia, and that Hinojosa was obese.  UTMB denies that Hinojosa had heat-sensitive medical conditions at that time.  UTMB admits that UTMB providers did not recommend Hinojosa receive climate-controlled housing.

195. UTMB denies the allegation that it "deliberately did nothing to notify officers that Albert Hinojosa was at increased risk of heat-related illness because of his underlying medical conditions."

19

196.    UTMB is unable to admit or deny the allegations regarding TDCJ's assignment of Hinojosa to a dormitory, or the layout of that dormitory.

197.    UTMB is unable to admit or deny an inmate's or Officer Quintanilla's observations or actions.

198.    UTMB is unable to admit or deny the allegations regarding Officer Quintanilla's observations or actions.

199.    UTMB is unable to admit or deny the allegations regarding Officer Quintanilla's knowledge.

200.    UTMB is unable to admit or deny the allegations regarding Officer Quintanilla's observations or actions.   UTMB is unable to admit or deny the allegation regarding TDCJ's policies.

201.    UTMB is unable to admit or deny allegations regarding other parties' knowledge.

202.    UTMB is unable to admit or deny the allegations regarding Officer Villegas's or Officer Ruiz's observations, knowledge, or actions.

203.    UTMB is unable to admit or deny allegations regarding other parties' knowledge.

204.    UTMB is unable to admit or deny the allegations regarding Officer Villegas's or Officer Ruiz's observations or actions.

205.    UTMB is unable to admit or deny the allegations regarding Officer Villegas's or Officer Ruiz's observations or actions.

206.    UTMB is unable to admit or deny allegations regarding other parties' knowledge.

207.    UTMB is unable to admit or deny the allegations regarding Officer Villegas's or Officer Ruiz's observations, knowledge, or actions.

208.    UTMB is unable to admit or deny the allegation regarding when the ambulance could leave the prison.

209.    UTMB admits that Hinojosa went into cardiac arrest and that Hinojosa died shortly after arriving at the hospital.   UTMB admits that Hinojosa was at the Garza West Unit for less than 48 hours.

210.    UTMB denies the allegation that Hinojosa suffered heat stroke.   UTMB admits that the autopsy report states that "the ambient temperature in the cell around the time of the seizure was recorded to be 92 degrees Fahrenheit."   UTMB is unable to admit or deny the allegation regarding the outside temperature.

211.    UTMB denies the allegation that an autopsy ruled out all other causes and found Hinojosa died of hyperthermia.  UTMB admits that the UTMB pathologist reported that Hinojosa was "vulnerable to the effects of environmental hyperthermia due to pre-existing natural disease, and likely suffered a seizure followed by fatal cardiac arrhythmia."

212.    This paragraph alleges a cause of action against individual defendants only and is inapplicable to UTMB.  Please see Dr. Murray's Answer to Plaintiff's Amended Complaint.

213.    This paragraph alleges a cause of action against individual defendants only and is inapplicable to UTMB.  Please see Dr. Murray's Answer to Plaintiff's Amended Complaint.

214.    This paragraph alleges a cause of action against individual defendants only and is inapplicable to UTMB.  Please see Murray's Answer to Plaintiff's Amended Complaint.

215.    This paragraph alleges a cause of action against individual defendants only and is inapplicable to UTMB.  Please see Dr. Murray's Answer to Plaintiff's Amended Complaint.

216.    This paragraph alleges a cause of action against individual defendants only and is inapplicable to UTMB.  Please see Dr. Murray's Answer to Plaintiff's Amended Complaint.

217.    This paragraph alleges a cause of action against individual defendants only and is inapplicable to UTMB.

218.    This paragraph alleges a cause of action against individual defendants only and is inapplicable to UTMB.

219.    This paragraph alleges a cause of action against individual defendants only and is inapplicable to UTMB.

220.    This paragraph alleges a cause of action against individual defendants only and is inapplicable to UTMB.

221.    This paragraph alleges a cause of action against individual defendants only and is inapplicable to UTMB.

212.    [1] UTMB admits that it receives federal funds, but denies that the Rehabilitation Act applies to UTMB in the facts and circumstances alleged.

---

[1] The jump from paragraph 221 to 212 reflects the numbering in Plaintiff's Amended Petition.

213.  UTMB denies that Title II of the ADA and ADAAA apply to UTMB in the facts and circumstances alleged.  UTMB denies that the ADA and ADAAA have the "same mandate" as the RA.

214.  UTMB denies that the ADA and ADAAA protect inmates with disabilities from extreme temperatures as a violation of their Eight and Fourteenth Amendments.

215.  UTMB denies that the Garza West Unit and other TDCJ units' operations comprise programs and/or services for purposes of the ADA, ADAAA, and/or RA.  UTMB denies that Hinojosa was qualified to receive the services of and participate in the programs or activities at the Garza West Unit.

216.  UTMB denies that Hinojosa was a qualified individual for purposes of the ADA, ADAAA, and/or RA and otherwise denies these allegations.

217.  UTMB admits that it knew Hinojosa had a history of hypertension, diabetes, schizophrenia, and/or depression, and was prescribed medications to treat those conditions.  UTMB denies that those conditions are disabilities.  UTMB denies that its employees intentionally discriminated against Hinojosa, under the meaning of the ADA, ADAAA and/or RA, by failing to protect him from extreme temperatures.  UTMB denies that it caused Hinojosa's death.

218.  UTMB denies that it failed and/or refused to reasonably accommodate Hinojosa, in violation of the ADA, ADAAA and/or RA.  UTMB denies that its alleged failure caused Hinojosa's death.

219.  UTMB denies that it failed and/or refused to reasonably modify facilities, services, accommodations, and/or programs to reasonably accommodate Hinojosa's alleged disabilities.  UTMB denies these alleged failures and refusals caused Hinojosa's death.

220.  UTMB denies that Hinojosa died as a direct result of UTMB's intentional discrimination.  UTMB denies that Plaintiff is entitled to the maximum amount of compensatory damages allowed by law.

221.  This paragraph alleges a cause of action against TDCJ only and is inapplicable to UTMB.

222.  This paragraph alleges a cause of action against TDCJ only and is inapplicable to UTMB.

223.  This paragraph alleges a cause of action against TDCJ only and is inapplicable to UTMB.

224.  This paragraph alleges a cause of action against TDCJ only and is inapplicable to UTMB.

225.  This paragraph alleges a cause of action against TDCJ only and is inapplicable to UTMB.

226.  This paragraph alleges a cause of action against TDCJ only and is inapplicable to UTMB.

227.   UTMB denies that its employees negligently used personal property, the prescription drugs prescribed to Hinojosa, to treat his medical conditions.   UTMB denies that Hinojosa's medical conditions were disabilities.

228.   UTMB denies that the use of these prescription drugs was dangerous and contributed to Hinojosa's death.

229.   UTMB denies that its employees knew, or should have known, that the medications substantially increased Hinojosa's risk of suffering a fatal heat stroke.

230.   UTMB denies that it had actual notice that Hinojosa died as a result of the prescription drugs.   UTMB denies that it had subjective awareness that it contributed to Hinojosa's death.

231.   UTMB denies that no exceptions to the waiver of sovereign immunity under the Texas Tort Claims Act apply.

232.   UTMB denies the allegations regarding Plaintiff's damages.

233.   UTMB denies the allegations regarding Plaintiff's damages.

234.   UTMB denies the allegations regarding the claims brought by Plaintiff.

235.   UTMB is unable to admit or deny whether Plaintiff brings this action in his capacity as heir-at-law of the Estate of Albert Hinojosa and the statements regarding his damages. UTMB denies that Plaintiff has suffered any of the listed damages.

236.   UTMB denies Plaintiff has capacity to bring this action regarding the alleged wrongful death of Hinojosa in his alleged capacity as dministrator of the Estate of Ramona Hinojosa s.   UTMB denies the damages listed.

237.   UTMB denies that Plaintiff is entitled to attorneys' fees and costs.

## III.
## GENERAL DENIAL AND AFFIRMATIVE DEFENSES

1.   Pursuant to Federal Rule of Civil Procedure 8(b), UTMB hereby denies each and every allegation contained within Plaintiff's Amended Complaint, except those expressly admitted herein.

2.   Plaintiff failed to state a claim for which relief can be granted under 42 U.S.C. § 12131 (the ADA and ADAAA), 42 U.S.C. § 794 (the RA), and under any other statute, constitutional theory, or legal theory.

3.   UTMB admits that a claim may be stated under 42 U.S.C. § 12131 (the ADA and ADAAA) or 42 U.S.C. § 794 (the RA) under certain circumstances, but UTMB denies that those circumstances are plead and present in this case.

4.      UTMB denies that Hinojosa was deprived of any right, privilege, or immunity granted or secured by the Constitution and/or laws of the United States.

5.      UTMB denies that Plaintiff is entitled to injunctive, declaratory, or any other relief demanded in the live complaint, and further denies that Plaintiff is entitled to damages, attorneys' fees, or costs in any amount whatsoever.

6.      UTMB denies that is a proper party to any claim brought against it under the Texas Survival Statute and hereby asserts sovereign immunity to any such claim.

7.      UTMB denies Plaintiff has standing to pursue claims pursuant to the Texas Survival Statute and the Texas Wrongful Death Statute.

8.      UTMB denies that Congress abrogated sovereign immunity for purposes of 42 U.S.C. § 12131 (the ADA and ADAAA) or 42 U.S.C. § 794 (the RA).

9.      UTMB denies that it failed to provide reasonable accommodations to Hinojosa as alleged by Plaintiff in the live complaint.

10.     UTMB denies that Hinojosa was disabled because the alleged disabilities plead by Plaintiff do not constitute a physical or mental impairment that substantially impairs a major life activity, as required for a valid cause of action pursuant to 42 U.S.C. § 12131 (the ADA and ADAAA) or 42 U.S.C. § 794 (the RA).

11.     UTMB denies that Hinojosa requested any accommodation, that Hinojosa knew or believed he needed any accommodation, or that UTMB denied him a reasonable accommodation pursuant to 42 U.S.C. § 12131 (the ADA and ADAAA) or 42 U.S.C. § 794 (the RA).

12.     The accommodations requested by Plaintiff constitute fundamental alterations to UTMB's policies, procedures, services, and/or facilities and do not constitute reasonable modifications.

13.     The accommodations requested by Plaintiff constitute an undue burden.

14.     The accommodations requested by Plaintiff would result in undue financial and administrative burdens on UTMB.

15.     UTMB hereby asserts that Hinojosa was not eligible to receive the benefits or services he was allegedly denied because UTMB does not provide access to or control the benefits or services Plaintiff claims Hinojosa was denied.

16.     UTMB asserts that Hinojosa was not denied any benefits or services because of his alleged disability.

**IV.**
**DEMAND FOR JURY**

UTMB hereby respectfully requests a trial by jury.

Defendant University of Texas Medical Branch at Galveston hereby urges this Court to deny the Plaintiff any and all relief demanded in his complaint and to grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

/s/ J. Lee Haney
**J. LEE HANEY**
Attorney-in-Charge
Assistant Attorney General
Texas Bar No. 00784203

**SHANNA ELIZABETH MOLINARE**
Assistant Attorney General
Texas Bar No. 24041506

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080
(512) 495-9139 (Fax No.)

**ATTORNEYS FOR DEFENDANTS**
**UNIVERSITY OF TEXAS MEDICAL**
**BRANCH AT GALVESTON AND OWEN**
**MURRAY**

25

## NOTICE OF ELECTRONIC FILING

I, J. LEE HANEY, Assistant Attorney General of Texas, certify that I have electronically submitted for filing Defendant UTMB's Answer to Plaintiff's (Hinojosa) Amended Complaint to the Court, on October 22, 2014, in the Southern District of Texas, Corpus Christi Division.


/s/J. Lee Haney
J. Lee Haney
Assistant Attorney General


## CERTIFICATE OF SERVICE

I, **J. LEE HANEY**, Assistant Attorney General of Texas, certify that I have served all counsel and or pro se parties of record electronically or by another manner authorized by FED. R. CIV. P. 5 (b)(2).

Jeffrey S. Edwards
Scott C. Medlock
Edwards Law
The Haehnel Building
1101 East 11th Street
Austin, TX 78702-1908

Brian McGiverin
Wayne Krause-Yang
Texas Civil Rights Project
4920 N. IH 35
Austin, Texas  78751-2716

Cynthia L. Burton
Bruce R. Garcia
Law Enforcement Defense Division
Office of the Attorney General
300 West 15th, 7th Floor
Austin, Texas  78701

/s/ J. Lee Haney
**J. LEE HANEY**
Assistant Attorney General